**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUSAN SPITALNIK, | Case No. 1:25-cv-08868 |
| Plaintiff, | Judge Matthew F. Kennelly |
| v. | Mag. Judge Daniel P. McLaughlin |
| MCKINSEY AND COMPANY, INC. UNITED STATES; and MCKINSEY AND COMPANY, INC., | |
| Defendants. | |

**DEFENDANTS' MOTION TO COMPEL**

Defendants state as follows for their Motion to Compel, pursuant to Local Rule 37.2:

## I.    INTRODUCTION

Plaintiff Susan Spitalnik asserts fourteen claims against her former employer, Defendant McKinsey and Company, Inc. United States, and also against Defendant McKinsey and Company, Inc. ("Defendants"). She brings these claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Pregnant Workers' Fairness Act ("PWFA"), the Illinois Human Rights Act ("IHRA"), and Illinois contract and tort law, including a claim for intentional infliction of emotional distress. In her Complaint, Plaintiff also describes an unimaginable personal tragedy—the death of her daughter within weeks of delivery. She contends she is disabled and has "suffered from mental health conditions, including acute stress disorder and post-traumatic stress disorder, which caused her heightened stress, anxiety, self-doubt, episodes of dissociation, forgetfulness, and difficulty with concentration and focus." *See* Dkt. #21, ¶146. She further asserts that Defendants' actions after the death of her daughter caused or contributed to her

emotional distress. *See, e.g.*, Dkt. #21, ¶¶ 9, 81, 83, 213. Plaintiff seeks uncapped emotional distress damages from her former employer. Given this background, Plaintiff's mental and physical history is directly relevant to her claims and alleged damages.

The Parties have cooperated in discovery in good-faith. Defendants limited their request for Plaintiff's medical records to five years before the first alleged adverse action in this case and have agreed not to seek records during the relevant time frame for ten of Plaintiff's twenty-one medical providers. For her part, Plaintiff agreed to produce records for eight of her medical and mental health providers. The Parties are at an impasse over three providers: Dr. Mayam Siddiqui, Plaintiff's OBGYN; Dr. Sarosh Rana, a specialist in maternal fetal medicine; and Dr. Alberuni Zamah, a fertility specialist ("Disputed Records" or "Disputed Providers").

These Disputed Records contain discoverable evidence regarding Plaintiff's physical, mental, and emotional state before, during, and after her claims arose against Defendants. Despite that Plaintiff is bringing claims under the Americans with Disabilities Act, the Pregnant Workers' Fairness Act, and the Family and Medical Leave Act, she refuses to produce the very records related to her disability, pregnancy, and need for leave.

These records are also directly relevant to Plaintiff's contention that Defendants caused or exacerbated her emotional distress. Plaintiff acknowledged as much in her Initial Disclosures and Interrogatory Answers, both of which identify one of the Disputed Providers as a treater from whom Plaintiff sought care for the very emotional distress she claims Defendants caused or exacerbated. Yet, she declined to produce these records.

Plaintiff claims that the Disputed Records are cumulative, harassing, and sensitive. But these records are not cumulative. Plaintiff has, to be sure, produced her mental health records, and agreed to produce records from providers unrelated to her pregnancy- or childbirth. But

Plaintiff's primary communications and records associated with her pregnancy and childbirth are with the Disputed Providers and reside in the Disputed Records. This information is not contained within other providers' records, unless by second-hand accounts, which surely are not comprehensive. The request for the Disputed Records is also not harassing. Plaintiff has put her medical and emotional state directly at issue in this case (both with respect to her claims and her damages) and the contents of these records may be critical to Defendants' ability to establish their defenses against Plaintiff's extensive allegations. Plaintiff's contention that these records are sensitive is also unpersuasive. Plaintiff cannot use her physical and emotional condition as both a sword and a shield in this case, claiming disability and extensive emotional distress, while denying Defendants access to records that may refute liability or causation.[1]

Defendants respectfully ask this Court to compel the production of the Disputed Records.

## II. PREREQUISITES TO MOTION

Consistent with Local Rule 37.2, the Parties met and conferred regarding the issues in this Motion in good faith.

Defendants' Request No. 12 originally asked Plaintiff to produce "all medical records and other documents related to any physical or mental condition or injury you have suffered at any time since January 1, 2019 to present." (Exhibit A).[2]

On May 5, 2026, counsel for the Parties spoke on the phone about their respective positions on full disclosure of Plaintiff's treatment records. On May 6, 2026, Defendants sent Plaintiff a deficiency letter addressing Plaintiff's production of her treatment records, among

---

[1] Further, this Court has entered a Protective Order and Defendants agree that the records will be marked confidential pursuant to that Order.

[2] Defendants exhibits are all excerpted, Defendants also redacted the identity of all providers or witnesses who are not in dispute. Defendants can provide complete and/or unredacted copies of its exhibits if desired.

other issues, alongside relevant legal authorities. (Exhibit B). On May 11, 2026, counsel for the Parties met via Teams to discuss Defendants' deficiency letter. The Parties agreed that Plaintiff would provide legal authorities supporting her position regarding her treatment records, and would also disclose all of her medical providers in response to Defendants' interrogatories. Defendants would then determine which providers they were willing to exclude from their requests. (Exhibit C). On May 12, 2026, Plaintiff's counsel sent Defendants case law underlying her position. (Exhibit D). On May 15, 2026, Plaintiff provided a preliminary set of treaters via email and a more detailed and verified set of treaters on Monday, May 18, 2026. On May 21, 2026, Defendants emailed Plaintiff an updated deficiency letter with legal authorities and with its proposed compromise for the disclosure of Plaintiff's treatment records. (Exhibit E). On May 26, 2026, the Parties had another meet-and-confer via Teams. The Parties were unable to reach a full resolution over the Disputed Records.

Through this meet-and-confer process, Plaintiff confirmed that she had 21 treaters within the requested date range: 5 mental health providers, and 16 medical providers. Defendants agreed to omit ten of these providers from their discovery request, and Plaintiff agreed to disclose records for eight other providers. The parties are at an impasse over Defendants' updated request for medical records for the three Disputed Providers from 2019 to the present, excluding any records related to alcohol, drug or HIV related treatment.

This Motion follows.

### III.     LEGAL STANDARD

A party may seek an order compelling discovery when another party fails to respond or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a). "In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 2020

4

U.S. Dist. LEXIS 146598, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party requesting discovery bears the initial burden to establish its relevancy." *Mendez*, 2020 U.S. Dist. LEXIS 146598, 2020 WL 4736399, at *3. *See also Hollis v. CEVA Logistics U.S., Inc.,* 603 F.Supp. 3d 611, 620 (N.D. Ill. 2022) ("Under general discovery principles, the party seeking to compel discovery has the burden of showing relevance."). After that, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, 2017 U.S. Dist. LEXIS 232923, 2017 WL 11560211, at *2 (N.D. Ill. Aug. 15, 2017) (citation omitted). District courts exercise broad discretion in resolving such discovery disputes and do so by adopting a liberal interpretation of the discovery rules. *Cortez v. Target Corp.*, 2023 U.S. Dist. LEXIS 199321, 2023 WL 7325965, at *1 (N.D. Ill. Nov. 7, 2023).

## IV.    DISCUSSION

As a threshold matter, Plaintiff is not claiming a privilege over her medical records. *See, e.g., United States v. Jong Hi Bek*, 493 F.3d 790, 802 (7th Cir. 2007) ("HIPAA does not give rise to a physician-patient or medical records privilege"). Therefore, the only remaining question is whether the Disputed Records are relevant and proportional to the claims or defenses in this case, as limited by Federal Rule of Civil Procedure 26(b)(2). *See* Fed. R. Civ. P. 26(b)(1) and (2).

### A.  The Disputed Records Are Relevant And Discoverable

Plaintiff's pregnancy and childbirth records are central to her claims. They contain evidence directly relevant to her allegations under the ADA, PWFA, FMLA, and her intentional infliction of emotional distress claim. Further, these records are relevant to Plaintiff's extensive

allegations that Defendants caused and/or exacerbated her emotional distress. The discovery of these Disputed Records is reasonably calculated to lead to the discovery of admissible evidence.

In the discovery context, relevance is broadly construed, and "courts should err on the side of permissive discovery" if relevance is in doubt. *Doe v. Loyola Univ. Chi.*, 2020 U.S. Dist. LEXIS 12289, at *5 (N.D. Ill. Jan. 24, 2020) (quoting *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004)). Medical records are relevant when they speak to a condition placed at issue in a lawsuit, such as a plaintiff's ADA-qualifying disability or significant emotional distress. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state."); *Wynne v. Loyola Univ. of Chicago,* 1999 U.S. Dist. LEXIS 14723, at *4 (N.D. Ill. Aug. 30, 1999) (holding in an ADA case in which the alleged disability was major depression that plaintiff placed her mental condition at issue because plaintiff's condition was relevant to a determination of disability under the Act).

When a plaintiff's alleged disability is at issue, courts have compelled broad disclosure of the plaintiff's medical records — including disclosure of pregnancy-related records — rather than limit production solely to the specific injuries or conditions on which a plaintiff's claims are based. *See, e.g.*, *Bibbs v. Miller*, 2021 U.S. Dist. LEXIS 203972, at *9–10 (S.D. Ind. Oct. 22, 2021) (rejecting the plaintiff's contention that only records related to injuries sustained during an alleged excessive force incident were relevant to her claims and concluding defendant was entitled to subpoena medical providers for all records including those related to childbirth and other unrelated matters); *Glen v. Potter*, 2005 U.S. Dist. LEXIS 27806 (N.D. Ill. Nov. 10, 2005) (compelling production of ADA-plaintiff's complete medical records, where plaintiff alleged a stress-related disability); *Richmond-Jeffers v. Porter Twp. Sch. Corp.*, 2010 U.S. Dist. LEXIS

6

124239, at *7 (N.D. Ind. Nov. 19, 2010) (noting plaintiff's "medical records are subject to discovery in their entirety" because the plaintiff alleged the defendant "violated the ADA when it fired her"). *See also Davis v. Ind. Packers Corp*, 2022 U.S. Dist. LEXIS 92866 (N.D. Ind. May 24, 2022) (compelling production of ADA-plaintiff's medical records beyond the plaintiff's specific alleged disability).

Here, Plaintiff's ADA, FMLA, and PWFA claims are directly connected to her pregnancy and childbirth. Plaintiff alleges she was "disabled" under the ADA following her pregnancy; that Defendants retaliated against her for using and not returning from an FMLA leave associated with her pregnancy; and that, over a year post-delivery, she still had a qualifying pregnancy-related condition under the PWFA that Defendants insufficiently accommodated. Plaintiff's pregnancy- and childbirth-related records are directly relevant to these pregnancy- and childbirth-related claims. Significantly, Plaintiff put these records directly at issue herself. Indeed, Plaintiff's initial disclosures identified her OBGYN (a Disputed Provider) as a witness she may use to support her claims and as someone likely to have "discoverable information regarding . . . Plaintiff's pregnancy [and] pregnancy-related conditions . . . ." *See* (Exhibit F, at p.9, ¶ 28). If Plaintiff intends to call a Disputed Provider as a witness, all the more reason to disclose the records about which they would presumably testify.

The Disputed Records are also inextricably tied to Plaintiff's claims for emotional distress. When a plaintiff seeks emotional distress damages, defendants are permitted to explore whether other stressors in the plaintiff's life caused the distress. *See Merriweather v. Family Dollar Stores of Ind.*, 103 F.3d 576, 580-1 (7th Cir. 1996) (reducing emotional distress damages based on evidence of other stressors in plaintiff's life). Medical records are relevant to the cause, nature, and severity of any emotional distress, including whether any distress was pre-existing or

7

caused (in part or total) by other stressors. *See Johnston v. Jess*, 2020 U.S. Dist. LEXIS 116831, at *8–9 (W.D. Wis. July 2, 2020). Courts have compelled broad production of medical records in similar circumstances. *See, e.g.*, *McCray v. Wilkie*, 2021 U.S. Dist. LEXIS 50972, at *1–2 (E.D. Wis. Mar. 18, 2021) (in Rehabilitation Act case where plaintiff's damages claims placed his medical and psychological condition at issue, compelling production of Plaintiff's entire medical records going back thirteen years and rejecting Plaintiff's offer to produce only records relevant to her knee injury and mental health, because "a plaintiff's medical history is relevant in its entirety."); *Jakes v. Boundreau*, 2020 U.S. Dist. LEXIS 161994 (N.D. Ill. Sept. 4, 2020) (in intentional infliction of emotional distress case, permitting defendant to subpoena plaintiff's medical and mental health records with no apparent restriction other than limiting the subpoena to five years before the alleged wrongful conduct); *Glen*, 2005 U.S. Dist. LEXIS 27806 (where plaintiff alleged conduct at work caused a stress-related disability, the court compelled production of all of plaintiff's medical records; the records were relevant to whether Plaintiff's claims about her condition were true, the extent of her condition, and whether there were alternate causes for her condition). *Cf. Mann v. Hospice of S. Ill. Inc.*, 2024 U.S. Dist. LEXIS 76965, at *12–13 (S.D. Ill. Apr. 26, 2024) (denying motion to compel production of all of plaintiff's medical records in discrimination case where, unlike here, plaintiff was not claiming emotional distress or claiming to incur any treatment relating to her allegations against her employer).

Records are relevant even if they do not expressly address an alleged emotional stressor, as records with a "positive report as to [a plaintiff's] mental health, or [which] discuss other traumatic events in [a plaintiff's] life, having nothing to do with Defendants" would be relevant because they "make it less likely that Defendants' conduct caused [Plaintiff] severe emotional

8

trauma." *See, e.g.*, *Coleman v. City of Chicago*, 2019 U.S. Dist. LEXIS 219753, at 21 n.2 (N.D. Ill. Dec. 23, 2019) (permitting defendant to subpoena mental health records without a topical limitation).

Here, Plaintiff's pre-pregnancy health, her pregnancy, and childbirth are clear alternative stressors for Plaintiff's emotional distress damages. Depending on the severity and nature of Plaintiff's physical and emotional state recorded in the Disputed Records, they may erode or defeat any causal connection between Defendants' actions and her mental state. This is especially true given the Disputed Records will presumably contain records of Plaintiff's pre-delivery mental condition, and therefore evidence a baseline mental state *before* Defendants' alleged adverse action.

More fundamentally, Plaintiff saw at least one of the Disputed Providers for her alleged emotional distress itself — something Plaintiff acknowledged in her Interrogatory Answers. *See, e.g.*, (Exhibit G, Initial Answer to Int. No. 12, at p. 23 ¶6) (stating her OBGYN, a Disputed Provider, treated her for the "emotional distress, including the physical effects of that distress" and that "Defendants' actions . . . . caused or contributed to these harms or health conditions.")

Plaintiff's pregnancy- and childbirth-related records are also relevant not only to the emotional distress Defendants allegedly caused, but to other medical conditions or life circumstances that would evidence her mental state over time. *See, e.g.*, *Coleman*, 2019 U.S. Dist. LEXIS 219753, at 21 n.2 (records that describe "other traumatic events in [Plaintiff's] life, having nothing to do with Defendants" are relevant because they "make it less likely that Defendants' conduct caused [Plaintiff] severe emotional trauma.").

Accordingly, the Disputed Records are directly relevant to Plaintiff's claims and Defendants' defenses to those claims, and should be produced.

9

### B. The Disputed Records are Proportionate to the Needs of the Case

Defendants' request for records from 2019 onwards for the Disputed Providers is proportionate to the needs of this case. Proportionality is a "common sense and experiential assessment" which takes into account the importance of the issues at stake in a litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of production outweighs its likely benefit. *Saleh v. Pfister*, 2021 U.S. Dist. LEXIS 18053, at \*4–5 (N.D. Ill. Feb. 1, 2021). *See also* Fed. R. Civ. P. 26(b)(1). These factors all favor producing the Disputed Records.

First, Plaintiff's claims are complex. She asserts fourteen causes of action over more than two years, contained in over 253 paragraphs of her Complaint. The well source of Plaintiff's allegations is a personal tragedy (the loss of a child post-delivery), which understandably could have led to trauma and emotional distress. Indeed, it is undisputed that after this event, Plaintiff took a leave of absence for more than a year. *See* Dkt. #33, ¶¶ 38, 105. Plaintiff seeks emotional distress damages that are uncapped by virtue of her claims under the Illinois Human Rights Act; accordingly, the amount in controversy is arguably high. *Cf.* 775 ILCS 5/8A-104(B) (lacking any damages cap); 42 U.S.C. § 1981a (capping compensatory damages for various federal employment statutes). In sum, this is not a lawsuit concerning a simple fact pattern or legal issues.

Second, Defendants have no other means of obtaining the Disputed Records. Plaintiff can produce the records herself, or authorize production to Defendants. She is not willing to do either.[3]

---

[3] Plaintiff objects to signing an authorization for release of her records. Defendants' request for an authorization for release of Plaintiff's medical records is standard and reasonable. Courts regularly compel parties to sign

10

Third, Defendants have already reduced the burden associated with producing the Disputed Records. Defendants' request for records is limited to a reasonable timeframe: a little less than five years predating the first alleged adverse action. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Amsted Rail Co., Inc.*, 2016 WL 2625065, 2016 U.S. Dist. LEXIS 6116, at *2 (S.D. Ill. May 9, 2016) (affirming magistrate judge's order to produce an authorization for defendant to obtain claimant's medical records going back five years before the alleged discriminatory acts). Moreover, Plaintiff's discovery disclosures establish Plaintiff has been diagnosed with relevant conditions since at least 2019 — making the temporal scope of Defendants' request all the more salient. *See, e.g.*, *Koch-Weser v. Bd. of Educ.*, 2002 U.S. Dist. LEXIS 18480, at *21 (N.D. Ill. July 19, 2002) (citing authorities; agreeing that defendants could call plaintiff's treaters to testify about his pre-existing mental conditions because "if defendants are found liable, they should be responsible only for those emotional damages caused by their illegal conduct, not plaintiff's pre-existing mental conditions").

What's more, Defendants have agreed to omit *ten* of Plaintiff's providers from their request for treatment records. This accounts for almost *half* of Plaintiff's disclosed treaters. Defendants elected not to seek these records in an effort to narrow the Parties' dispute and focus on the key facts at issue.

Third, producing the Disputed Records would be *less* burdensome for Plaintiff than withholding them, and would ensure production of all relevant evidence. Plaintiff already possesses the Disputed Records, which are comingled with records Plaintiff has agreed to

---

authorizations for a release of medical records, rather than rely on a party's review. *See, e.g., McNeil v. Toms,* 2026 U.S. Dist. LEXIS 7954, at *2–3 (E.D. Wis. Jan. 15, 2026) (pro se Section 1983 case; "The plaintiff does not get to choose which medical records he wants to send to the defendant. The court will grant the defendant's motion to compel."); *Johnson v. Rogers,* 2018 U.S. Dist. LEXIS 233173, at *2, 15–18 (S.D. Ind. Apr. 20, 2018) (requiring plaintiff to execute authorizations for medical records about a physical injury, despite plaintiff's claim to have disclosed all relevant medical records).

produce. As Defendant understands from the meet-and-confer process, all of Plaintiff's medical records she possesses — Disputed or otherwise — are organized in chronological order without distinguishing between providers. Plaintiff, therefore, would have to go page by page to identify and remove the records for each Disputed Provider. This process is clearly far more burdensome than simply disclosing these relevant records, including the Disputed Records, in their entirety.

### C. Plaintiff's arguments against production are not persuasive

Plaintiff has articulated that her pregnancy- and childbirth-related records contain sensitive information that implicates her dignity interests and that the records are cumulative of the medical and mental health information she has already disclosed. Thus, Plaintiff believes producing the Disputed Records is disproportionate to the needs of this case and harassing.

Plaintiff's legal claims relate to her pregnancy, childbirth, and disability. In doing so, she has placed her sensitive medical information squarely at issue. Courts have resisted plaintiffs' efforts to carve off from discovery conditions plaintiffs make central to their case. *See, e.g.*, *Butler v. Burroughs Wellcome, Inc.*, 920 F. Supp. 90, 92 (E.D.N.C. 1996) (noting that ADA claims "touch upon the most private and intimate details of a plaintiff's life" and concluding plaintiff could not "make an issue of her mental state, build a case upon psychiatric evidence" regarding their troubled history and "then claim [to be] too embarrassed to answer defendant's questions relating to those topics."); *Glen*, 2005 U.S. Dist. LEXIS 27806 (rejecting ADA-plaintiff's argument that "the discovery request for all medical records is overly invasive to [plaintiff's] privacy and contrary to [HIPAA]").

The Disputed Records go to the crux of Plaintiff's claims and are therefore relevant and discoverable, "sensitive though they may be." *Johnston*, 2020 U.S. Dist. LEXIS 116831, at *4–5, 10 (where plaintiff alleged emotional distress damages, compelling production of medical

12

records even though plaintiff argued records were "private and that defense counsel is harassing her"). *See, e.g.*, *Bibbs* , 2021 U.S. Dist. LEXIS 203972, at *9–10 (concluding defendant was entitled to subpoena medical provider for all records even though Plaintiff was concerned such records would include "records related to birthing her children and other unrelated matters").

To allay Plaintiff's privacy concerns, Defendants have limited their request for treatment records and do not object to labeling Plaintiff's medical records as "confidential" under the terms of the Court's Protective Order.

The Disputed Records also are not cumulative of Plaintiff's other disclosures. The Disputed Records are the only records that directly concern Plaintiff's pregnancy and childbirth; all other records would be second-hand sources of a central event in Plaintiff's allegations. To be sure, the records Plaintiff is willing to disclose, such as for her primary care physician and mental health providers, are material. But they would not be the primary source documents regarding Plaintiff's pregnancy and childbirth. The Disputed Records are unique in that regard. And, as noted, Plaintiff acknowledged in written discovery that she discussed her alleged emotional distress with at least one Disputed Provider — meaning there is relevant and potentially unique evidence about her mental state in the Disputed Records.

Finally, Defendants request for the Disputed Records is not meant to harass Plaintiff. For the reasons articulated in this Motion, Defendants have a good-faith belief the Disputed Records contain relevant and discoverable evidence and that this information is proportionate to the needs of this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Compel, and provide such further relief as this Court deems warranted and just.

DATED: May 29, 2026

Respectfully submitted,

/s/ *Katherine Mendez*
Katherine Mendez
kmendez@seyfarth.com
Bryan Vayr
bvayr@seyfarth.com
Sharilee Smentek
smentek@seyfarth.com


SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448

Attorneys for Defendants

14

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine Mendez, an attorney, certify that on May 29, 2026, I caused to be electronically filed the foregoing document with the Clerk of the Court using the approved electronic filing system.

/s/ *Katherine Mendez*
Attorney for Defendant